**Linda TAYLOR, Individually and as heir of Larry Taylor, Deceased, and as Next Friend of Joshua Taylor, a Minor, et al.**

v.

**R.W. SEAMANS, Individually and in his capacity as a member of the Texas Department of Public Safety, State of Texas, et al.**

**Civ. A. No. B–85–1553–CA.**

United States District Court, E.D. Texas, Beaumont Division.

July 15, 1986.

---

Donald B. Sample, Beaumont, Tex., for plaintiffs.

Ann Kraatz, Jim Mattox, Atty. Gen., Mary F. Keller, Scott McCown, Austin, Tex., for defendants Adams, State of Tex. and Dept. of Public Safety.

David E. Bernsen, Benckenstein, Norvell, Bernsen & Nathan, Beaumont, Tex., for defendants Hardin County, Holzapfel and Freeman.

## MEMORANDUM OPINION

COBB, District Judge.

The matters now before the court arise from motions for dismissal of a 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988 claims, as well as state law claims. The motions, being convincing under the law and the facts, are granted in their entirety.

This case was filed on November 13, 1985, on behalf of the surviving wife, son and parents of Larry Taylor. Plaintiffs named R.W. Seamans, the State of Texas, the Texas Department of Public Safety, James B. Adams, Hardin County, H.R. "Mike" Holzapfel, C. Smith, and Dale Freeman as defendants to this action. Service of process was obtained on each of these defendants. The defendants James B. Adams, the State of Texas, and the Texas Department of Public Safety filed motions to dismiss, and the court has fully considered the motions and the parties have presented oral arguments on them.

## I. FACTS

For the purpose of the court's determination of the motions to dismiss, plaintiffs' version of the facts related to the incident in question is accepted as accurate and recited herein. On November 16, 1983, Larry Taylor was involved in an automobile accident in the proximity of Lumberton, Texas, a town located in Hardin County. Several people were injured during the accident and an unspecified number were taken to the hospital for medical treatment. Taylor, though requesting medical treatment for injuries to his head and body, was not hospitalized. Instead, he was placed under arrest by defendant R.W. Seamans, an officer with the Texas Department of Public Safety. Seamans, at all times material to the accident investigation and arrest, was acting within the course and scope of

his employment. Pursuant to the arrest, Seamans used his state vehicle to transport Taylor to the Hardin County jail. Taylor, at approximately 4:30 p.m., was placed in a cell without having been medically examined or treated, though he was at or near a state of unconsciousness. There is a possibility that defendants Seamans and Freeman, a Hardin County Deputy Sheriff, without provocation or justification, at some unspecified time during the incident, used excessive force in handling Taylor.

At some later time, two men were placed in the cell with Taylor. Though he was not moving, Taylor's condition was not checked by the officers when jailing the other two men. At about 9:30 p.m., the two cellmates informed the jail officials of Taylor's death. Two hours after the discovery of his death, Taylor's family received its first notification of his incarceration and demise. Upon going to the jail, family members were denied information relating to the incident and told to check back the following day. The family members were not allowed to view the decedent's body.

Those are the facts as they relate to the defendants who filed the motions. The bases of the suit against the State of Texas, the Texas Department of Public Safety, and James Adams are the allegations that these specific defendants knew, or should have known, of the failure of the Department of Public Safety officers to provide necessary medical treatment to persons in their custody, and that these defendants did not adequately train or supervise their officers to ensure that such treatment was provided. Further, it is alleged that these same defendants knew or should have known of the propensity of their officers to use excessive force, and that these defendants did not adequately train or supervise their officers to preclude the use of such

force. These contended shortcomings are alleged to have deprived the decedent and plaintiffs of their constitutional rights, entitling them to bring an action under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988,[1] as well as actions for Taylor's wrongful death and under the Texas Survival Act. Plaintiffs specifically brought this action against defendant Adams solely in his official capacity as Director of the Department of Public Safety. Though other defendants are in this case, only Texas, the D.P.S., and Adams are affected by the motions to dismiss.

## II. THE STATE OF TEXAS AND THE DPS

■ There is no question that the State of Texas and the Texas Department of Public Safety are entitled to immunity from this controversy under the doctrine of sovereign immunity as contained in the Eleventh Amendment to the Constitution of the United States of America.[2] Though the literal language of the Amendment proscribes only actions brought against states by citizens of foreign jurisdictions, it is a settled matter of law that an unconsenting state is also immune from suits brought in federal courts by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1973).

This immunity is not limited to where the state is the named defendant. When unwillingly brought into federal court, a department of the state is usually entitled to invoke the doctrine of sovereign immunity as well. "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst*

---

**1.** For the purposes of this opinion, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988 will be hereafter referred to as a "§ 1983 action." Though each section is independent, they are considered in the aggregate as the Eleventh Amendment immunity analysis applies equally to each.

**2.** The Amendment provides:

The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

*State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1983). The Texas Department of Public Safety was created by legislative enactment. Its funding is governed by state law and is derived from state revenue. Therefore, an action against the D.P.S. is in effect an action against the State of Texas. The D.P.S. is entitled to the same sovereign immunity as the real party in interest, the State of Texas.

There have been a few narrow limitations carved out from a universal application of Eleventh Amendment sovereign immunity. Thus, in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court found that the Eleventh Amendment did not bar an action in the federal courts to enjoin a state and its officials from enforcing a statute claimed to violate the Fourteenth Amendment. However, the Court greatly limited the scope of this ruling in *Edelman, supra,* when it held that absent consent or waiver, a claimant against a state is entitled only to prospective relief and cannot obtain a monetary award from the general revenues of the state treasury.

Plaintiffs do not deny that they are seeking only monetary damages from the state. There has been no request for the type of prospective injunctive relief approved in *Edelman.* Rather, they attempt to present their claim as another exception to the general rule of sovereign immunity. Plaintiffs' assertion that *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), allows for judgments against the state and its officials to be paid from the public treasury is misleading. Suffice it to say that there the Supreme Court rendered an opinion which allowed federal courts to assess fees against states which do not comply with the injunctive relief ordered by those courts. The Supreme Court held that this power was necessary and ancillary to the enforcement of the recognized power to issue prospective injunctive relief. This right to funds from the public treasury was narrowly limited and certainly does not extend to the situation where plaintiffs find themselves now. Plaintiffs are not at-tempting to enforce any court order or injunction. Rather, they seek only damages. The power of a federal court to assess fees against a state in order to protect its prospective orders is completely separate from the power to allow monetary damages against that state. The former does not violate the Eleventh Amendment; the latter would do so.

Plaintiffs next advance the proposition that *Edelman's* ruling barring monetary damages against the states has been eviscerated by later decisions such as *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This argument is the concurring opinion of Justice Brennan in *Hutto, supra,* which plaintiffs cite at length. However, that theory has itself been rebuffed. The Supreme Court expressly rejected this precise argument in *Quern v. Jordan,* 440 U.S. 332, 338–40, 99 S.Ct. 1139, 1143–45, 59 L.Ed.2d 358 (1978). Further, Monell is absolutely limited to actions against *local* government units that are not considered part of the state for Eleventh Amendment purposes. *Id.* 440 U.S. at 340, 99 S.Ct. at 1144; *Monell, supra* 436 U.S. at 690, n. 54, 2035 n. 54. Any fair and accurate reading of Supreme Court case law reveals no doubt that *Edelman* is in full effect in barring actions for monetary damages against the states and their departments.

Plaintiffs next assert that under § 5 of the Fourteenth Amendment, Congress can limit the doctrine of state immunity. For what it is worth, this statement is true. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Further, Congress enacted 42 U.S.C. § 1983 *et al* pursuant to § 5 of the Fourteenth Amendment. Plaintiffs would have this court to believe therefore that in § 1983 cases the states and their departments have no Eleventh Amendment immunity. To so hold, this court would have to overrule the Supreme Court. "42 U.S.C. § 1983 does not override States' Eleventh Amendment immunity." *Pennhurst, supra,* 465 U.S. at 99, 104 S.Ct. at 907, citing *Quern, supra* 440 U.S. at 342, 99 S.Ct. at 1145. Simply put, the

Supreme Court has explicitly held that Congress had no intention of overturning the Eleventh Amendment immunity to states when it enacted the precurser to § 1983.[3] *Quern, supra* at 341, 342, 99 S.Ct. at 1145, 1146. Absent Congressional intentions to so limit the states' immunity, the Eleventh Amendment retains full force and effect. An assertion to the effect that § 5 of the Fourteenth Amendment *per se* bars the application of Eleventh Amendment immunity is by itself a gross misstatement of the law.

■ Plaintiffs' final position is that the State of Texas has waived its sovereign immunity by enacting the Texas Tort Claims Act, V.T.C.A., *Civil Practices & Remedies Code*, §§ 101.001–109.[4] There is no doubt that in certain limited circumstances, the State of Texas has waived its immunity and is amenable to suit. The task of the court is to determine whether the state has so waived its immunity in the present case. The court is guided by the holding in *Edelman, supra* 415 U.S. at 673, 94 S.Ct. at 1360, citing *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909):

> "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment [the court] will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'"

*Edelman* further required "a clear declaration of the state's intention to submit ... to other courts than those of its own creation." *Id.*, citing *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 876, 88 L.Ed. 1121 (1944). There is no such language, implication or declaration in the Texas Tort Claims Act. The Supreme Court has given further direction in *Pennhurst, supra*, 465 U.S. at 99, 104 S.Ct. at 907, where it stated,

> "The State's consent must be unequivocally expressed ... Our reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system. A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." (Emphasis in original).

Additionally, the Court "consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Id.* at 99, n. 9, 104 S.Ct. at 907 n. 9.

Given the Supreme Court's clear guidance, this court must find that the Texas Tort Claims Act has not served to waive Texas' Eleventh Amendment immunity in federal courts. There are no overwhelming implications or express language which leave room for no other reasonable construction. There is no clear declaration of the intention of Texas to submit to the federal courts in this matter. A fair reading of the Texas Tort Claims Act, in fact, indicates that in granting this limited waiver of its sovereign immunity, the state desired to hear all such causes of action in its own courts. The venue and jurisdiction[5] language of the Act, § 101.102(a), which states *where* the state may be sued, provides that the suit is to be filed only in the county in which the cause of action arose. Federal court actions are filed according to division and district, not by county. This

---

3. § 1 of the Civil Rights Act of 1871, 17 STAT. 13.

4. This is a codification of Article 6252–19, TEX. REV.CIV.STAT. (repealed), the statute in force at the time of the incident. For the purpose of this case, the relevant provisions of each statute are identical in effect.

5. § 101.102(a)'s predecessor, Art. 6252–19 § 5, though specifically mentioning only venue, has been held by Texas courts to be jurisdictional and not merely a matter of venue. *Hardt v. Texas Department of Corrections*, 530 S.W.2d 897 (Tex.Civ.App.—Austin 1975, no writ); *Bishop v. State*, 577 S.W.2d 377 (Tex.Civ.App.—El Paso 1979, no writ). There is no indication that § 101.102(a) will be interpreted in a different fashion.

necessarily implies the action is to be filed in state court, not federal court. To extend jurisdiction to the federal courts not only has no basis in the state law, but runs contrary to the clear implications therein. Waiver of the state's immunities are not to be easily inferred.

There is clear and express language in § 101.025 of the Act which grants a limited waiver of immunity to any person having a claim under the Act. However, this language is merely sufficient to indicate *whether* Texas may be sued, saying and implying nothing about *where* it may be sued. Limiting the cases brought under the Act to Texas state courts in no way impedes the rights of any claimants to bring suit. Extending the action to federal courts is neither necessary nor appropriate. Absent clear express language or overwhelming implications that Texas has waived its immunity in federal courts by enacting the Tort Claims Act, this court must rule that the state's waiver of immunity is limited to courts of its own creation.

It is to be further noted that even if Texas could be construed as waiving some of its immunity in the federal courts, such waiver would not necessarily preserve plaintiffs' action against the state in this court. The waiver in the Act is limited to claims arising thereunder. § 101.025 of the Texas Tort Claims Act. This by no means incorporates a 42 U.S.C. § 1983 action. As the waiver could not be extended beyond its terms, plaintiffs' § 1983 action would still be barred by Texas' Eleventh Amendment immunity. Plaintiffs would then be limited to their cause of action under the Texas Tort Claims Act. This court could only exercise ancillary jurisdiction over that question. Without ruling on the matter, this court has grave reservations about the propriety of ancillary jurisdiction when the federal claim is dismissed for lack of subject matter jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Owen Equipment & Erection Company v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Pennhurst, supra.*

This court has no jurisdiction over the State of Texas or the Texas Department of Public Safety in this case. The state and its entity have an Eleventh Amendment immunity to a § 1983 action in federal court, and such immunity has not been waived. Specifically, the Texas Tort Claims Act cannot be construed as a waiver of that state's Eleventh Amendment immunity. Under the facts of this case, the court is compelled to dismiss the claims against the State of Texas and the Texas Department of Public Safety. This dismissal is without prejudice as to any action filed in Texas state court pursuant to Texas law.

### III. JAMES B. ADAMS

Defendant Adams was brought into this suit because of his position as Director of the Texas Department of Public Safety. Plaintiffs expressly plead that at all times material to this controversy, Adams was the Director of the D.P.S. Further, Adams is described as acting only within his official capacity as the director of this department. Under the facts and pleadings of this case, Adams is being sued solely in his official capacity. Such being the situation, he is entitled to be dismissed from this action as a matter of law.

The Supreme Court has made clear the law as to state officials sued in their official, as opposed to individual, capacities. As the Court held in *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Edelman, supra,* 415 U.S. at 663, 94 S.Ct. at 1355, stated, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate

against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963) *(per curiam ).* "And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst, supra,* 465 U.S. at 101–102, 104 S.Ct. at 908–09.

The *Ex Parte Young* exception to allow suits challenging the constitutionality of a state official's action is not involved in this case. *Young* is limited to cases where prospective injunctive relief *(Edelman ),* or damages ancillary to enforcing such prospective injunctive relief *(Hutto ),* is sought. The Supreme Court has directly held the *Young* exception is not applicable when the official conduct is contrary to state law as opposed to federal constitutional law. *Pennhurst, supra,* 465 U.S. at 106, 104 S.Ct. at 911.

There is no debate that plaintiffs only seek damages to be paid from the public treasury. Plaintiffs, though attempting to justify the position, never deny this objective. Adams is sued only in his official capacity, which is in reality a suit against the sovereign. *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). If the action against Adams in his official capacity were allowed, any Eleventh Amendment immunity would be circumvented. The same cases and policies which bar the action against the State of Texas and the D.P.S. apply equally to bar suit against the state's official. As the State of Texas is the actual substantial party in interest when Adams was named as defendant, the state must be permitted to extend its sovereign immunity over actions within his official capacity as well. Therefore, the action against James Adams as Director of the Department of Public Safety must be dismissed.

Accordingly, plaintiffs' actions against the defendants the State of Texas, the Texas Department of Public Safety, and James B. Adams, Director of the Texas Department of Public Safety, are DISMISSED. Plaintiffs' actions against these defendants based upon 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988 are DISMISSED WITH PREJUDICE; plaintiffs' causes of action against these defendants arising from state law are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.