**KERRVILLE STATE HOSPITAL,**
Appellant,

v.

**James O. CLARK and Genevie Clark, Appellees.**

**No. 03–93–00645–CV.**

Court of Appeals of Texas,
Austin.

May 31, 1995.

Rehearing Overruled July 12, 1995.

Dan Morales, Atty. Gen., Mike Thompson, Jr., Asst. Atty. Gen., Tort Litigation Div., Austin, for appellant.

Randall B. Richards, Boerne, for appellee.

Before POWERS, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

In April 1991, appellees James O. Clark and Genevie Clark (the "Clarks") sued appellant Kerrville State Hospital ("Kerrville") and the Texas Department of Mental Health and Mental Retardation ("Department") in Travis County for the wrongful death of their daughter, Rebecca Clark Ligon. Kerrville and the Department filed a motion to transfer venue to Kerr County in May 1991, which the trial court denied. After a jury verdict finding in favor of the Clarks, Kerrville and the Department moved for judgment non obstante veredicto ("judgment n.o.v."). The trial court granted the Department's motion, but denied Kerrville's motion and rendered judgment for the Clarks as to Kerrville.

Kerrville appeals. We will affirm the trial court's judgment.

## BACKGROUND

The Clarks' daughter, Rebecca Clark Ligon, was the estranged wife of Gary Ligon. Gary had a history of mental problems. In April 1989, after threatening Rebecca and resisting arrest, Gary was taken to Kerrville for treatment, where he remained for approximately one month. In May 1989, the Kerrville Institutional Review Board determined that Gary was not manifestly dangerous. A Kerrville psychiatrist recommended to a Kerr County court that Gary begin an outpatient commitment so that Kerrville could monitor his medication; Gary began the outpatient commitment pursuant to a court order. On May 22, 1990, he voluntarily checked into Kerrville for inpatient treatment; Kerrville, however, released Gary at his request on May 24, and reinstated the outpatient commitment. On June 1, 1990, Gary brutally murdered Rebecca.[1] The Clarks filed suit against Kerrville and the Department, alleging that Kerrville's negligent release of Gary proximately caused Rebecca's death.

The jury found both Kerrville and the Department negligent in Rebecca's death. The trial court subsequently granted a judgment n.o.v. for the Department, but rendered judgment that Kerrville was liable on the Clarks' wrongful death claim. Kerrville appeals by eight points of error, raising venue, sovereign immunity, duty, and proximate cause issues.

## DISCUSSION

### Venue

In Kerrville's first point of error, it contends that the trial court erred in maintaining venue in Travis County because that decision violated the express terms of the Texas Tort Claims Act. See Tex.Civ.Prac. & Rem.Code Ann. § 101.102(a) (West 1986 &

---

1. The record indicates that Gary decapitated, dismembered, and burned Rebecca's body, and then attempted to hide the remains in a field.

Supp.1995).[2] Section 101.102(a) provides that "[a] suit under this chapter shall be brought in state court in the county in which the cause of action or a part of the cause of action arises." *Id.* Venue may be proper in many counties under the venue rules, and the plaintiff usually has the right to choose venue. *Wilson v. Texas Parks & Wildlife Dep't,* 886 S.W.2d 259, 260 (Tex.1994). If the defendant raises a venue issue, however, the burden is on the plaintiff to show that venue is maintainable in the county of the plaintiff's choice. Tex.R.Civ.P. 87(2)(a).

■ Kerrville argues that venue was proper in Kerr County under the venue provision of the Tort Claims Act because Kerr County was a "county in which the cause of action or a part of the cause of action ar[ose]." Tex. Civ.Prac. & Rem.Code Ann. § 101.102(a) (West Supp.1995). The Clarks agree that the Tort Claims Act controls venue for their claim; however, they assert that Travis County was *also* a county of proper venue because their claims against the Department arose in Travis County. *See id.* Although Kerrville asserts that the Tort Claims Act's venue provision is mandatory, the disposition of this issue is not necessary to resolve the controversy presented here. Because both Travis and Kerr Counties fall within section 101.102(a), we conclude that venue would be proper in either county, regardless of whether the Act's provision is mandatory or permissive.

2. The Clarks initially respond that Kerrville waived its venue challenge by waiting fifteen months to request a hearing on its motion to transfer. Rule 87(1) of the Texas Rules of Civil Procedure provides: "The determination of a motion to transfer venue shall be made promptly.... The movant has the duty to request a setting on the motion to transfer." This Court has previously held that Rule 87(1) contemplates that "a movant may not sit on his rights indefinitely without incurring waiver." *Whitworth v. Kuhn,* 734 S.W.2d 108, 111 (Tex.App.—Austin 1987, no writ). In *Whitworth,* the plaintiff waited thirteen months after filing his motion to transfer before requesting a hearing. Similarly, Kerrville and the Department waited approximately fifteen months before requesting a hearing on their motion. Although a "complete lack of diligence is inconsistent with the purpose of Rule 87(1), and the trial court could have refused [the] motion on that basis," *Whitworth,* 734 S.W.2d at 111, the Clarks overlook the fact that

■ Kerrville alleges, however, that venue was improper in Travis County because the Clarks failed to assert any claims against the Department that were not excluded from liability under the express terms of the Texas Tort Claims Act. *See* Tex.Civ. Prac. & Rem.Code Ann. §§ 101.021, .056 (West 1986). The Clarks respond that Kerrville failed to specifically deny the venue facts as alleged, and the trial court therefore was entitled to take the pleaded facts as true. Tex.R.Civ.P. 87(2)(b).[3] Although the trial court may have had sufficient grounds on which to deny the motion to transfer venue at the time of the venue hearing, our review is not limited to the record evidence at that point in time. The Civil Practices and Remedies Code governs our review of the venue issue:

> On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error and shall be reversible error. In determining whether venue was or was not proper, the appellate court *shall consider the entire record, including the trial on the merits.*

Tex.Civ.Prac. & Rem.Code Ann. § 15.064(b) (West 1986) (emphasis added). However, if probative evidence exists to support the trial court's determination, even if the preponderance of the evidence is to the contrary, we should defer to the trial court's judgment. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex.1993). The scope of this review appropriately "strikes a balance between the com-

this Court nevertheless addressed the merits of the venue claim in *Whitworth* because the trial court did not refuse the motion on the basis of a lack of diligence. *See id.* Because the trial court did not deny Kerrville and the Department's motion on this ground, we will address the merits of the point of error.

3. Rule 87(2)(b) provides:

> It shall not be necessary for a claimant to prove the merits of a cause of action, but the existence of a cause of action, when pleaded properly, shall be taken as established as alleged by the pleadings. When the defendant specifically denies the venue allegations, the claimant is required, by prima facie proof ... to support such pleading that the cause of action taken as established by the pleadings, or a part of such cause of action, accrued in the county of suit.

peting interests of the plaintiff and the defendant." *Wilson*, 886 S.W.2d at 262.

The Clarks assert that at least a part of their cause of action arose from acts and omissions that occurred at the Department's headquarters in Travis County, including the Department's: (1) failure to implement and adhere to its official standards; (2) failure to monitor or require adequate reports from facilities relating to the release of patients like Gary; (3) failure to conduct adequate follow-up reviews to determine Kerrville's compliance with its regulations; (4) failure to perform adequate reviews of Kerrville's superintendent; and (5) failure to provide case management services to Gary in conformity with its rules and regulations.[4]

At trial, the Clarks offered the testimony of three witnesses who were employees of the Department—Dennis Jones, the Department's commissioner; David Wanser, assistant deputy commissioner; and Sue Dillard, the director of Standards and Quality Assurance. These three witnesses testified at length about the Department's development of policies and rules, the Department's supervision of Kerrville Outreach Center, and the Department's mechanisms to ensure compliance with its policies. In addition, the court also admitted several documents which indicated that Kerrville had received deficiency ratings by the Department in several different areas and that Kerrville had been criticized for the "lack of collaboration between the hospital and community services [that]

has had a deleterious effect on compliance efforts."

Given the testimony of the three witnesses and the documents admitted at trial, we conclude that probative evidence existed in the record that a part of the cause of action arose in Travis County. *See Ruiz*, 868 S.W.2d at 758. The Department was a proper party to the suit; thus, venue was proper in Travis County because a part of the cause of action arose there. Tex.Civ.Prac. & Rem. Code Ann. § 101.102(a) (West 1986 & Supp. 1995).[5] Therefore, we are confronted with a situation where the suit would have been proper in either of two counties under the Tort Claims Act. The Clarks contend that because venue was proper in either county, they had the right to choose Travis County as the trial site. *See Wilson*, 886 S.W.2d at 260. We agree. Under *Wilson*, if the plaintiff has chosen a county of proper venue, no other county can be a proper venue in the case. *See id.* at 261–62. We overrule Kerrville's first point of error.

### Sovereign Immunity

In its fourth, fifth, sixth, and seventh points of error, Kerrville contends that the trial court erred in denying its motion for judgment n.o.v. because the Clarks' claims are barred by the doctrine of sovereign immunity. The Tort Claims Act abolishes immunity only in certain specified circumstances. *See* Tex.Civ.Prac. & Rem.Code

---

4. The crux of the Clarks' claim against the Department involved the use and misuse of records, files, surveys, reports, and other information about Kerrville and its outpatient program. At the time of the venue hearing and trial, the misuse of records and files constituted use of tangible personal property for purposes of the Texas Tort Claims Act. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.021(2) (West 1986); *Texas Dep't of Mental Health & Mental Retardation v. Petty*, 848 S.W.2d 680, 684 (Tex.1992). The supreme court subsequently held that information recorded in writing does not constitute tangible property for purposes of the Tort Claims Act. *See University of Tex. Medical Branch v. York*, 871 S.W.2d 175, 178–79 (Tex.1994). The Clarks do not challenge on appeal the trial court's judgment n.o.v. for the Department.

5. Kerrville contends that the trial court's grant of a judgment n.o.v. indicates that no cause of action was viable against the Department; thus, the

trial court should have transferred venue to Kerr County. The Clarks presented evidence that the Department was negligent in its implementation of policies regarding the treatment of patients like Gary, and the jury specifically found the Department "negligent in failing to ensure compliance by Kerrville ... with its rules and standards as they affected the care and treatment of Gary Ligon." The Department asserted several grounds in its motion for judgment n.o.v.; the court did not specify which grounds it relied upon in granting the motion. We cannot speculate on the grounds for the judgment n.o.v., and we refuse to hold that venue was improper based solely on the trial court's ultimate grant of the motion. *Cf. Humphrey v. May*, 804 S.W.2d 328, 329–30 (Tex.App.—Austin 1991, writ denied) (allowing later findings to control over earlier venue rulings of trial court would result in significant waste of judicial time and resources).

Ann. § 101.021 (West 1986).[6] A governmental unit is not liable for damages unless the negligent act alleged falls within the statutory waiver of immunity. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31 (Tex.1983). The specific waiver alleged by the Clarks was the condition or use of tangible property. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.021(2) (West 1986). Kerrville argues that the Clarks did not present sufficient evidence at trial that the use or misuse of tangible property caused Rebecca's death.

At trial, the jury found that Kerrville was negligent in discharging Gary on May 24, 1990, based upon inadequate medical records and inadequate administration of medications. The Clarks candidly admit that, although medical charts and records were considered tangible personal property at the time of the trial under *Texas Department of Mental Health & Mental Retardation v. Petty*, 848 S.W.2d 680, 684 (Tex.1992), the supreme court subsequently determined that such records did not constitute tangible personal property under the Act. *See University of Tex. Medical Branch v. York*, 871 S.W.2d 175, 179 (Tex.1994) (holding that information recorded in a patient's medical records does not constitute tangible personal property). They argue, however, that *York* is not controlling because the unobjected to issue and instruction given to the jury permitted it to consider not only medical records and charts, but *in the alternative*, whether Kerrville was negligent in the use of medications for Gary.[7] The Clarks assert that

misuse of medication is a use of tangible personal property and, therefore, comes within the waiver of immunity. *See* Tex.Civ. Prac. & Rem.Code Ann. § 101.021(2) (West 1986); *Quinn v. Memorial Medical Ctr.*, 764 S.W.2d 915, 917 (Tex.App.—Corpus Christi 1989, no writ). We agree that *York* is not dispositive of the issues in this case given that the pleadings stated a claim for negligence based on misuse of medication and the jury instruction permitted the jury to find negligence in Kerrville's release of Gary based on the use or misuse of medications.

■ Kerrville correctly asserts, however, that whether the actions of Kerrville are characterized as use, misuse, or non-use of the medications affects our determination of whether sovereign immunity has been waived under the Act. The supreme court has stated that it has "never held that a non-use of property can support a claim under the Texas Tort Claims Act. Section 101.021, which requires the property's condition or use to cause the injury, does not support this interpretation." *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex.1994).[8] The supreme court has defined "use" as "to put or bring into action or service; to employ for or apply to a given purpose." *Salcedo*, 659 S.W.2d at 33 (quoting *Beggs v. Texas Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 254 (Tex.Civ.App.—San Antonio 1973, writ ref'd)).

■ The parties dispute whether Kerrville's negligence involved the use or the non-

---

**6.** The Tort Claims Act provides:

> A governmental unit in the state is liable for:
>
> .   .   .   .   .
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex.Civ.Prac. & Rem.Code Ann. § 101.021(2) (West 1986).

**7.** Question Number 1:

> Was Kerrville State Hospital negligent in discharging Gary Ligon on May 24, 1990?
> You are instructed that in determining the negligence, if any, of the officers and employees of Kerrville State Hospital, consider *only* their use or misuse of medical records, admission and discharge documents, and/or medications of Gary Ligon.

(Emphasis added.)

**8.** The supreme court, however, has held that the negligent failure to furnish an item of property necessary to make safe the tangible property actually supplied invokes the waiver of the Tort Claims Act. *York*, 871 S.W.2d at 181 (Gammage, J., dissenting); *see Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex.1989) (concluding that sovereign immunity was waived by the failure to provide a life preserver because the preserver was an essential part of the swimming attire that the defendant had a responsibility to provide); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 300 (Tex.1976) (holding that failure to provide knee brace to football player fell within waiver provision because the brace was part of the uniform that he should have been provided and failure to provide made the uniform defective).

use of tangible personal property, i.e., medications. The Clarks argue that Kerrville's negligence involved the misuse of medications because Kerrville prescribed an *oral* antipsychotic medication as opposed to an *injectionable* antipsychotic drug. The Clarks' claim is premised on the fact that Gary's medical records indicated a history of medication noncompliance, that Kerrville was aware of Gary's noncompliance and his propensity for violence when not taking his medication, and that Kerrville had used injectionable antipsychotic medications with Gary during previous commitments. At trial, Dr. Saul Rosenthal, an expert witness, testified that injectionable medications were readily available, that one injection would last approximately a month, and that the staff should have monitored more carefully Gary's use of medications. Rosenthal opined that, given Gary's history of noncompliance with drug regimens, he was surprised that injectionable forms were not used because such use would have guaranteed compliance. Based on this and other evidence, the Clarks assert that prescription of oral antipsychotic medications constituted a misuse of tangible personal property because Kerrville should have prescribed injectionable drugs which would have been effective for at least one month.

In response, Kerrville urges that the failure to prescribe an injectionable form of medication constitutes a non-use of tangible property and, thus, does not fall within the limited waiver of the Act. *See Kassen*, 887 S.W.2d at 14. The crux of Kerrville's argument regarding non-use of tangible personal property involves the failure to confine Gary after his voluntary commitment. Appellate courts have consistently held that the failure to restrain or confine an individual consti-

tutes an error in judgment and does not involve the negligent use of tangible personal property. *See Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex.App.—Corpus Christi 1988, writ denied); *Beggs v. Texas Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 254 (Tex.Civ. App.—San Antonio 1973, writ ref'd). Although the failure to confine Gary may not fall within the waiver provisions of the Act, the Clarks argue that Kerrville's release of Gary was negligent because Kerrville failed to ensure that he would remain medication compliant after his release. Therefore, their case is distinguishable from the cases Kerrville cites in support of its argument that its negligence does not involve the misuse of tangible personal property.[9]

Nevertheless, we are compelled to determine whether prescribing oral medications constitutes a misuse of tangible personal property that waives sovereign immunity. In *Quinn v. Memorial Medical Center*, 764 S.W.2d 915 (Tex.App.—Corpus Christi 1989, no writ), the court concluded that the dispensing of drugs by a hospital involved a use of tangible personal property that fell within the waiver provisions of the Act. *Id.* at 917; *see* Tex.Civ.Prac. & Rem.Code Ann. § 101.021(2) (West 1986). In *Kassen*, the supreme court concluded that a *failure to provide* medication does not constitute a use of tangible personal property. *See Kassen*, 887 S.W.2d at 14. The facts of the instant cause fall somewhere on the continuum between *Quinn* and *Kassen*. If Kerrville had prescribed no medication, we would clearly be under *Kassen*'s non-use of tangible personal property standard. Kerrville, however, prescribed Gary oral antipsychotic medications, even though his patient charts indicated that he had a history of noncompliance

9. Kerrville also states in its brief:
Further, there is insufficient evidence in the record that appellant negligently used or misused Gary Ligon's medications. The only evidence offered by appellees that might arguably be probative of the negligent use or misuse of medications is certain testimony of Dr. Saul Rosenthal ... that KSH should have used an injectable form of medication, in lieu [sic] of the medication used.
Although Kerrville apparently contends that the evidence is factually insufficient to support the

trial court's denial of a judgment n.o.v., legal sufficiency is the only standard by which a motion for judgment n.o.v. can be measured. A motion for judgment n.o.v. can only be granted if there is *no evidence* to support the jury's findings. *Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 693 (Tex.App.—Austin 1989, no writ). Clearly, Dr. Rosenthal's testimony provides some evidence of Kerrville's use or misuse of Gary's medications, thereby making the denial of the judgment n.o.v. proper.

with medications and a propensity to become violent when not medication compliant and abstinent from alcohol. We note that "[l]iability has been imposed when the injuries are alleged to have proximately resulted from the negligent use of property in some respect deficient *or inappropriate for the purpose for which it was used.*" *Hopkins v. Spring Indep. Sch. Dist.,* 706 S.W.2d 325, 327 (Tex. App.—Houston [14th Dist.] 1986), *aff'd,* 736 S.W.2d 617 (Tex.1987) (emphasis added). Under the facts presented, we conclude that Kerrville's use of oral medications instead of injectionable ones constituted a misuse of antipsychotic drugs to control Gary because oral medications were inappropriate based on his history. Because the instant cause involves a use or misuse of tangible personal property, it falls within the Tort Claims Act's waiver provision. *See* Tex.Civ.Prac. & Rem. Code Ann. § 101.021(2) (West 1986).

▮▮▮ Kerrville asserts that the Clarks' allegations involve actions by Kerrville which are discretionary in nature and, thus, are excluded from liability pursuant to the Tort Claims Act. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.056 (West 1986).[10] The purpose of excluding discretionary acts from liability is "to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions." *State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979). Although the government is immune from liability if the negligence causing the injury lies in the *formulation* of policy, the government is not protected if an employee or an officer acts negligently in carrying out that policy. *Id.* at 788.

This Court has developed an approach for determining which discretionary acts subject a governmental unit to liability:

The discretionary function exception is limited to the exercise of governmental discretion and does not apply to the exercise of nongovernmental discretion such as professional or occupational discretion. . . . The government is liable for its agent's departure from policies made by his superiors but not for harm done by the agent's adherence to those policies even if they turn out to cause harm.

*Christilles v. Southwest Tex. State Univ.,* 639 S.W.2d 38, 42 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (concluding that professor's decision to use a real glass in a play involved an exercise of professional or occupational discretion, not governmental discretion, and that the university could be held liable) (quoting 3 Kenneth C. Davis, *Administrative Law Treatise* § 25.08, at 403–04 (Supp. 1982)); *see Garza v. Salvatierra,* 846 S.W.2d 17, 22 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.) ("Discretionary acts are those related to determining what the policy of the governmental unit will be, but do not extend to the carrying out of the specifics of particular policies. . . .").

▮▮▮ Examining the actions of the doctors and staff at Kerrville, we conclude that they were exercising professional or occupational judgment in their decision not to prescribe an injectionable antipsychotic medication for Gary. The supreme court, analyzing what discretionary acts of medical personnel are protected under the doctrine of official immunity, recently held that a reviewing court must distinguish between governmental and medical discretion. *Kassen,* 887 S.W.2d at 11. Medical personnel are not immune from tort liability in their exercise of medical discretion. *Id.* We conclude that the staff exercised purely medical discretion in its decision to medicate Gary orally rather than by injection. As we indicated in *Christilles,* the exercise of such professional discretion does not absolve the government of liability under the Act. *See Christilles,* 639 S.W.2d at 42–43.[11]

---

10. Section 101.056 provides:
   This chapter does not apply to a claim based on:
   (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
   (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

11. Kerrville also contended that the official immunity of its employees preserved its governmental immunity under section 101.056. *See City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex. 1993) (governmental sovereign immunity re-

■ Finally, Kerrville asserts that because its employees were acting pursuant to a court-ordered outpatient commitment, it is exempted from liability under the Act. Tex. Civ.Prac. & Rem.Code Ann. § 101.053(b) (West 1986). Section 101.053(b) provides: "This chapter does not apply to a claim based on an act or omission of an employee in the execution of a lawful order of any court." *Id.* Although the court ordered an outpatient program for Gary, we fail to see how this releases Kerrville from liability. Under the order, Kerrville was directed to develop and submit a treatment plan for Gary, Kerrville's employees were responsible for Gary's outpatient care, and Gary was ordered to comply with the treatment plan. The order indicates that the trial court intended that Kerrville keep the court apprised of any changes in treatment and any noncompliance of Gary with the treatment plan. The court, however, left to Kerrville's discretion the development and implementation of Gary's treatment. Dr. William Schultheis, Gary's physician at Kerrville, testified that he did not report the decision to discontinue antibuse [12] or the fact that Gary's blood levels were subtherapeutic, indicating that he had not been taking his medication, because these were decisions that the court had left to hospital personnel.

The court never ordered that Gary not be given injectionable antipsychotic drugs—this type of decision was left to Kerrville's staff. Although we agree that the decision to release Gary pursuant to the court order may be protected under the judicial exception of the Act, the decision to release Gary without taking necessary steps to ensure medication compliance is not similarly protected. Kerrville's actions are not immune from liability under the judicial exception. *See* Tex.Civ. Prac. & Rem.Code Ann. § 101.053(b) (West 1986).

Because we have concluded that Kerrville's negligence falls within the waiver of sovereign immunity under the Tort Claims Act, we overrule Kerrville's fourth, fifth, sixth, and seventh points of error.

*Duty*

■ In its second and third points of error, Kerrville asserts that the trial court erred in denying its motion for judgment n.o.v. because Kerrville owed no duty to the Clarks and the Clarks had no standing to pursue their negligence claim. Duty is the threshold issue in a negligence case, and the existence of a duty is a question of law for the court to decide from the circumstances surrounding the occurrence. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). In assessing whether a defendant is under a duty, the court considers several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Of these factors, foreseeability of the risk is the dominant consideration. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987).

■ Kerrville initially argues that the Clarks lack standing because no physician-patient relationship existed between Kerrville's medical staff and Rebecca that gave rise to a duty to protect Rebecca from harm. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.03(a)(4) (West Supp.1995) (providing for claim against health care provider for treatment that results in injury or death to patient). Kerrville contends that a doctor owes a duty only to his or her patients, and that this duty cannot be extended to include the patient's victims. *See Bird v. W.C.W.,* 868 S.W.2d 767, 770 (Tex.1994) (concluding that psychologist owed no·duty to father of child

---

mains intact if employee is protected under doctrine of official immunity). In order to be protected, however, the government must be able to show that the employee was exercising governmental discretion, as opposed to medical discretion. *See Kassen,* 887 S.W.2d at 11. Because we have concluded that Kerrville's staff exercised purely medical discretion in its decision to medicate Gary with oral antipsychotic drugs before

his release, the staff would not be protected by official immunity. Hence, sovereign immunity cannot be preserved on this basis.

**12.** Antibuse is a medication given to alcoholics which makes them physically ill if they drink alcohol.

diagnosed as sexually abused because no physician-patient relationship existed between father and psychologist); *Dominguez v. Kelly,* 786 S.W.2d 749, 751 (Tex.App.—El Paso 1990, writ denied); *Salas v. Gamboa,* 760 S.W.2d 838, 840 (Tex.App.—San Antonio 1988, no writ).

A few cases have addressed a doctor's duty to third parties injured by a patient. In *Gooden v. Tips,* 651 S.W.2d 364 (Tex.App.—Tyler 1983, no writ), the court held that a physician owes a duty to the driving public to warn a patient of the possible consequences of driving while using a prescribed medication. *Id.* at 369–70. In contrast, Kerrville cites *Williams v. Sun Valley Hospital,* 723 S.W.2d 783 (Tex.App.—El Paso 1987, writ ref'd n.r.e.), which held that a hospital owed no duty to a woman injured when her car struck a mentally ill patient who had escaped from the hospital. The court refused to impose liability "for the unpredictable conduct of ... patients with a mental disorder." *Id.* at 787. Both of these cases, however, acknowledged that a distinction would exist if the doctor knew or had reason to know that the patient had violent propensities. *See id.* (refusing to impose liability "[w]here there is no allegation of a threat or danger to a readily identifiable person"); *Gooden,* 651 S.W.2d at 370 (noting that doctor had no duty to prevent patient from driving because doctor had not taken control of patient and patient was not a person with dangerous and violent propensities).

Although generally a doctor owes a duty only to his or her patients, we are confronted with a situation very different from that presented in the cases cited by Kerrville. None of those cases involved a patient who the doctor knew or had reason to know was dangerous. Section 319 of the *Restatement (Second) of Torts* provides:

> One who takes charge of a third person *whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise rea-*sonable care to control the third person to prevent him from doing such harm.

*Restatement (Second) of Torts* § 319 (1965) (emphasis added). In concluding that an employer has a duty to prevent an employee from harming others, the supreme court noted, "[s]uch a duty may be analogized to cases in which a defendant *can exercise some measure of reasonable control over a dangerous person when there is a recognizable great danger of harm to third persons.*" *Otis Eng'g,* 668 S.W.2d at 311 (emphasis added). This case fits squarely within section 319—Kerrville had two options in exercising control over Gary: (1) petition the court to change the outpatient commitment to inpatient commitment based on Gary's medication noncompliance or (2) prescribe an injectionable antipsychotic medication that would have stabilized Gary's outpatient condition for at least a month. Clearly, the hospital took charge of Gary when it permitted Gary's voluntary commitment on May 22, 1990; thus, it was under a duty to use reasonable care in the release of Gary on May 24, 1990. At the very least, this duty required that Kerrville ensure Gary's medication compliance.

Analyzing the situation presented here under the factors outlined in *Otis Engineering* and utilized in *Bird,* it becomes clear that Kerrville had a duty to use reasonable care in its release of Gary. *Otis Eng'g,* 668 S.W.2d at 309; *Bird,* 868 S.W.2d at 769–70. In the instant cause, the risk, foreseeability, and likelihood of injury were high. Evidence in the record indicates that Gary had a great propensity for violence when he was not taking antipsychotic drugs. In contrast, we can find no social utility in the hospital's decision not to medicate Gary by injection, given that it was well aware of Gary's long history of noncompliance. In addition, we perceive no appreciable burden to the hospital staff in medicating by injection as opposed to prescribing medication to be taken orally. We conclude that the hospital owed a duty to use reasonable care in its release of Gary.[13] We

13. Kerrville argues that there was no readily identifiable victim and, thus, it had no duty to warn Rebecca because Gary had made no specific threats against her. *See Tarasoff v. Regents of the Univ. of Cal.,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 31, 551 P.2d 334, 351 (1976). Although we do not decide the issue of duty based on a failure to warn Rebecca of Gary's imminent release and his deteriorating mental condition, we note that a threat need not be made against a *specific*

overrule Kerrville's second and third points of error.

### Proximate Cause

■■■■■ In its eighth point of error, Kerrville asserts that the trial court erred in denying its motion for judgment n.o.v. and its motion to disregard the jury's answers because there was no evidence or insufficient evidence to support the jury's findings that any actions of Kerrville were the proximate cause of Rebecca's death.[14] In deciding a no-evidence point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986). To determine the factual sufficiency of the evidence, we must consider and weigh all the evidence; the judgment should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

■■■ Proximate cause is composed of two essential elements: (1) cause in fact and (2) foreseeability. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex.1980). Cause in fact requires that the negligent act at issue be a substantial factor in producing the injury, without which such harm would not have resulted. *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex.1988).

The supreme court has established the requirements of foreseeability:

> "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others.... Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence. There can be concurrent proximate causes of an accident. *All persons whose negligent conduct contributes to the injury, proximately causing the injury, are liable.*

*Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992) (emphasis added).

■■■ Causation does not have to be supported by direct evidence; circumstantial evidence and inferences drawn therefrom will sufficiently support a finding of causation. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex.1992). A plaintiff is not required to prove beyond a reasonable doubt that the defendant's actions were a cause of the injury, and it suffices if the plaintiff introduces evidence "from which reasonable persons may conclude that it was more probable that the event was caused by the defendant than that it was not." W. Page Keeton, *Prosser and Keeton on the Law of Torts*

---

victim in order for the duty to warn to be imposed. The Arizona Supreme Court has specified which individuals fall within the duty to warn:

> [W]e agree with those cases interpreting *Tarasoff* which state that a psychiatrist should not be relieved of this duty merely because his patient never verbalized any specific threat.... When a psychiatrist determines, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, the psychiatrist has a duty to exercise reasonable care to protect the *foreseeable victim* of that danger. The foreseeable victim is one who is said to be within the zone of danger, that is, subject to probable risk of the patient's violent conduct. *Hamman v. County of Maricopa*, 161 Ariz. 58, 63–64, 775 P.2d 1122, 1127–28 (1989). We agree with the Clarks that under this definition, Rebecca was a foreseeable victim. As Gary's wife, she was certainly within the zone of danger, and she had been the victim of Gary's violence

on many previous occasions. Under the circumstances presented in the instant cause, Kerrville may have had a duty to warn Rebecca, but since we have concluded that Kerrville owed a duty to the general public to use reasonable care in the release of Gary, we do not reach the question of Kerrville's duty to warn.

14. Kerrville initially contends that this case involves a medical malpractice claim governed by Article 4590i and, therefore, the Clarks were required to prove through expert testimony that the negligent treatment of Gary caused Rebecca's death. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.03(a)(4) (West Supp.1995); *Wendenburg v. Williams*, 784 S.W.2d 705, 706 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Article 4590i, however, concerns only claims against a health care provider for treatment that results in the injury or death of a *patient*. *See* Tex.Rev.Civ. Stat.Ann. art. 4590i, § 1.03(a)(4) (West Supp. 1995). Article 4590i is not controlling on the issues presented by the Clarks' wrongful death claim.

§ 41, at 269 (5th ed.1984); *see Havner*, 825 S.W.2d at 460.

We now turn to an examination of the evidence. Dr. Rosenthal, the Clark's expert witness, testified that if Gary had not been released from the hospital, he would not have been able to murder Rebecca. He also testified that Kerrville was negligent in discharging Gary without using an injectionable antipsychotic drug to ensure his medication compliance because Kerrville's records indicated that Gary was not complying with his medication regimen. Dr. Rosenthal concluded that, given Gary's past history of violence when drinking and not medication compliant, "there was a high probability that if this person was sent out with no particular place to go, in the midst of separation and divorce from his wife, with no money, that there was a severe and significant risk that he was— that in all likelihood or probability that he was going to be violent again."

In addition, Kerrville's own expert witness, Dr. J. Ray Hays, testified that Gary's medical records indicated that he had been assaultive toward Rebecca before his voluntary commitment on May 22, 1990, and that if the same factors that made him violent toward her previously were present, he would be violent toward her again. He also testified that failure to take medication would probably lead to deterioration of mental condition, that Gary's delusional thinking at the time of his commitment on May 22 indicated that his mental condition was deteriorating, and that the deterioration could have been caused by failure to take his antipsychotic medication. He stated that a patient who has become violent in the past when medication noncompliant may become violent in the future if not adhering to the prescribed drug regimen. He opined that the duty of Kerrville's staff "once they have accepted him as a patient, is to work to find an appropriate community placement and ensure that he has a follow-up appointment to stabilize him on new medication which might be appropriate when you discharge him." Similarly, Dr. Richard Coons testified that Gary had a history of violent and assaultive behavior, and that past violence could constitute an indication of future violence. Coons also admitted that

Gary had been noncompliant with his treatment programs over the years.

▄▄ We conclude that the evidence adduced at trial sufficiently established that Kerrville's failure to use an injectionable antipsychotic drug was a cause-in-fact of Rebecca's death. A causal connection must rest in reasonable probabilities, but "reasonable probability is determined by a consideration of 'the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase.'" *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 331 (Tex.1968) (quoting *Insurance Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex.1966)). In determining the causal relationship, the trier of fact is not limited to medical opinion but may view the evidence as a whole. Although no expert specifically testified that the failure to medicate Gary properly caused Rebecca's death, the record is replete with evidence from which the jury could establish such a causal link. Evidence of Gary's deteriorating mental condition at the time of his release, statements to Kerrville staff in which he confirmed he was not taking his thorazine, previous episodes of violence against Rebecca, the fact that Gary's medical records explicitly contained statements that Gary could be extremely dangerous when not medication compliant, coupled with expert testimony concerning the likelihood of future violence based on past violence and the fact that Gary murdered Rebecca approximately seven days after his release, provides ample evidence from which the jury could conclude that failure to medicate Gary properly caused Rebecca's death.

▄▄ We also conclude that the foreseeability requirement of proximate cause was satisfied. Dr. Rosenthal testified that it was reasonably foreseeable that "an event like [Rebecca's murder] could happen." The hospital staff knew that Gary could "become *extremely* dangerous to self or others if not medication compliant and abstinent from alcohol." Dr. Thomas Hardee testified as to the reasonable probability that, based on his past medical history, Gary would become violent and aggressive if not medication compliant. Kerrville argues that Dr. Rosenthal's

refusal to opine that there was a ninety to one hundred percent chance that Gary would harm someone upon release and to agree that the hospital knew or should have known that Gary would murder Rebecca renders his opinions too speculative to be relied upon by a jury. We disagree. "Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence." *Travis*, 830 S.W.2d at 98; *see Harvey v. Stanley*, 803 S.W.2d 721, 726 (Tex.App.—Fort Worth 1990, writ denied) (foreseeability does not require actor to anticipate precise hazard or consequences that may grow out of dangerous situation). Foreseeability requires only that Kerrville should have reasonably anticipated that Gary would commit some type of violent act if not medication compliant, not that it anticipate that Rebecca would be murdered. *See Gutierrez v. Scripps–Howard*, 823 S.W.2d 696, 699 (Tex.App.—El Paso 1992, writ denied) ("Foreseeability does not require the actor to anticipate in the particular incident, but only that he reasonably anticipate the general character of the injury."). The record provides ample evidence that Kerrville knew of Gary's propensity for violence and could have reasonably anticipated that Rebecca might be the victim of that violence if Gary was not medication compliant. The trial court did not err in refusing to grant the motions for judgment n.o.v. and to disregard the jury's finding on proximate cause. We overrule Kerrville's eighth point of error.

## CONCLUSION

We have determined that venue was proper in Travis County, sovereign immunity does not protect Kerrville from liability, Kerrville owed a duty to control Gary through the use of injectionable drugs after its decision to release him, and sufficient evidence supports the jury's finding that Kerrville proximately caused the death of Rebecca. Accordingly, we affirm the judgment of the trial court.