Thaddeus Michael **JOLLY**, Plaintiff,

v.

Donald **KLEIN**, Duane Ray Boyd, Richard Hendell and Johnny Klevenhagen, Defendants.

Civil A. No. H–94–2706.

United States District Court, S.D. Texas, Houston Division.

March 29, 1996.

Stephen E. Scheve, Shook, Hardy & Bacon, Houston, TX, for Plaintiff.

Deborah L. Leach, Office of Attorney General, Austin, TX, for Donald Klein.

Michael Paul Flemin, Assistant County Attorney, Houston, TX, for Boyd and Klevenhagen.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Klein's Motion to Dismiss (# 34) and Supplemental Motion to Dismiss (# 46). Having considered the motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the motions should be GRANTED IN PART and DENIED IN PART.

I. *Background*

On August 26, 1991, plaintiff Thaddeus Michael Jolly ("Jolly") was arrested for delivery of a controlled substance and was taken to the Harris County Central Jail to await trial. According to Jolly, in October 1991, he noticed a yellow pus-like substance emanating from his penis when he tried to urinate. He requested to see the medical doctor on duty at the jail, defendant Donald Klein ("Dr. Klein"), about this condition. He alleges that he submitted a number of requests to see the doctor during the month of October 1991, but he was never given an appointment. Finally, in November 1991, defendant Duane Ray Boyd ("Boyd"), the Sexually Transmitted Disease Counselor at the jail, who is not a licensed physician, spoke with Jolly about his problem. Jolly states that although Boyd refused to refer him to a doctor, Boyd took

blood samples from him. Boyd reported to Jolly that his blood tests did not reveal the presence of a sexually transmitted disease. Jolly, however, continued to notice a discharge from his penis and to experience urinary problems and pain in his testicle area.

Jolly claims that he forwarded numerous requests over the ensuing seven months to see Dr. Klein and the medical department, all to no avail. He alleges that he handed the request forms to several nurses to deliver to the doctor and spoke to various nurses about his medical problem, but was told he had to wait until an appointment was set up to see the doctor. Jolly contends that on June 11, 1992, he spoke with Nurse Peavy about his condition and explained to her that he had forwarded several requests for medical attention to Dr. Klein and the medical staff, yet all had gone unanswered. According to Jolly, Nurse Peavy reached on a desk where there was a small stack of request forms, including a request bearing Jolly's name and medical complaint. Jolly alleges that Peavy showed him the request and stated that he "had a request on file and the Doctor was aware of [his] complaint." Peavy also allegedly told him that he would have to wait for an appointment and said that if he forwarded any more requests to the medical department with the same problem, they would only be discarded. In June 1992, Jolly filed a grievance against Dr. Klein and the medical staff for refusing to give him medical attention. Jolly asserts that he received neither a response to his grievance nor any medical attention.

Jolly appeared in court on July 6, 1992, and was appointed counsel to represent him in connection with the drug charges. He was convicted of delivery of a controlled substance on July 8, 1992. During this time period, as well as having urinary problems, pain, and discharge from his penis, Jolly noticed that his right testicle had decreased in size, as if something had caused it to decay. Boyd saw Jolly again in July 1992, at which time he allegedly refused to refer Jolly to a physician. Jolly's blood was drawn, and Boyd reported to Jolly that the test results were normal. According to Jolly, during this visit, Boyd made jokes about his testicle de-creasing in size, stating that Jolly "shouldn't worry, because if [he] lost a testicle, [he] had another." Jolly also alleges that Boyd tried to compare Jolly to himself, saying that he had lived with one testicle for several years and his health was just fine.

After his counsel obtained a court order compelling the medical department to give Jolly medical attention, he was seen by Dr. Klein in August 1992. According to Jolly, he explained his symptoms to Dr. Klein, who noticed that there was an enormous size differential between Jolly's testicles and suggested that blood be drawn and tested. Jolly claims that he never received a follow-up appointment or test results from Dr. Klein. Jolly's counsel obtained a second court order mandating a medical examination and wrote a letter on October 14, 1992, to defendant Johnny Klevenhagen ("Klevenhagen"), the Sheriff of Harris County, Texas, requesting his assistance in seeing that Jolly was seen by a licensed urologist. In November 1992, Jolly was examined at the urology clinic at L.B.J. Hospital by Dr. McAndrews. Dr. McAndrews was unable to diagnose Jolly's condition, although he took an ultrasound of his testicle in an effort to discover the cause for its decay. While Dr. McAndrews reportedly advised Jolly that his health was fine, he continued to experience penile discharges and pain in his testicle area.

In February 1993, Jolly was transferred to the Texas Department of Criminal Justice—Institutional Division. Upon arriving at the Hightower Unit, he was promptly seen by a physician's assistant, Mr. Crosby, who took blood and urine samples from Jolly. A few days later, Crosby told Jolly that the tests had revealed that he was suffering from chlamydia. Jolly was prescribed tetracycline for the infection, which ultimately was cured, but Jolly claims that he has continued to experience urinary problems and severe testicular problems. At the time he filed this lawsuit on October 4, 1994, Jolly reported that he was under the care of the Hightower Unit physician, Dr. Behrens, who, according to Jolly, had told him that due to the length of time that he had carried the disease while being untreated, there was a great possibility that he would have permanent bladder and

testicular problems and that he would be sterile and infertile.

Jolly claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated when 1) he was made to suffer excruciating pain for eighteen months or more due to a penile infection, which also caused an atrophy of one of his testicles, 2) he was denied adequate and prompt medical care, 3) he was subjected to eighteen months of unnecessary and wanton infliction of pain due to the defendants' reckless disregard, deliberate indifference, and intentional mistreatment of his medical needs, and 4) he continues to have excruciating pains in his testicular area and severe urinary problems. Jolly also alleges that defendants owed him a duty of reasonable care to provide him with adequate medical care and they breached that duty by their failure to provide prompt and adequate medical care for his penile infection and atrophy of his testicle, resulting in humiliation, embarrassment, frustration, excruciating pain, and mental anguish.

Defendant Klein moves to dismiss this suit under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that (1) Jolly's claims against Klein are frivolous under 28 U.S.C. § 1915(d), (2) his complaint fails to state facts, which, if proven, would defeat the defense of qualified immunity, and (3) his lawsuit against Klein, in his official capacity, is barred by the Eleventh Amendment. In his supplemental motion, Klein moves to dismiss Jolly's negligence claims alleging that (1) Jolly does not have a cause of action for medical malpractice and (2) Klein is entitled to official immunity from a medical malpractice claim.

## II. Analysis

### A. The Applicable Standards

#### 1. Lack of Subject Matter Jurisdiction

█ A motion to dismiss for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) may be granted on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir.1989); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court must take as true all of the allegations of the complaint. *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir.1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir.1985). A motion to dismiss under Rule 12(b)(1) should not be granted "unless it appears certain that the plaintiff cannot prove any set of facts in support of [his] claim which would entitle [him] to relief." *Saraw Partnership*, 67 F.3d at 569; *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir.1992); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992) (citing *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 742 n. 1, 96 S.Ct. 1848, 1850 n. 1, 48 L.Ed.2d 338 (1976)).

█ Jurisdiction is essentially the authority conferred by Congress to decide a given type of case. *Hagans v. Lavine*, 415 U.S. 528, 538, 94 S.Ct. 1372, 1379–80, 39 L.Ed.2d 577 (1974). In the absence of diversity of citizenship, it is essential that a substantial federal question be presented to support jurisdiction. *Id.* at 536–37, 94 S.Ct. at 1378–79 (citing *Ex parte Poresky*, 290 U.S. 30, 31–32, 54 S.Ct. 3, 4–5, 78 L.Ed. 152 (1933)). "[F]ederal courts are without power to entertain claims otherwise within their jurisdiction, if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,' 'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion.'" *Id.* (citations omitted). As the United States Supreme Court explained in *Hagans*, a question may be "'plainly unsubstantial,' either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'" *Id.* at 537, 94 S.Ct. at 1379 (quoting *Poresky*, 290 U.S. at 31–32, 54 S.Ct. at 4–5).

### 2. *Failure to State a Claim*

 A motion to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim tests only the formal sufficiency of the statements of the claims for relief. It is not a procedure for resolving contests about the facts or the merits of the case. In ruling on a motion to dismiss for failure to state a claim, the court must take the plaintiff's allegations as true, view them in a light most favorable to him, and draw all inferences in his favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc.,* 30 F.3d 627, 629 (5th Cir.1994); *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284–85 (5th Cir.1993). Moreover, the court may not look beyond the four corners of the plaintiff's pleadings. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). A *pro se* complaint, such as Jolly's, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (quoting *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972)). Thus, a motion to dismiss under Fed.R.Civ.P. 12(b)(6), like a motion under 12(b)(1), must be denied unless it appears to a certainty that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Gamble,* 429 U.S. at 106, 97 S.Ct. at 292; *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995); *In re U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.,* 39 F.3d 556, 559 (5th Cir.1994); *ALX El Dorado, Inc. v. Southwest Sav. & Loan Ass'n,* 36 F.3d 409, 410 (5th Cir.1994); *McCartney,* 970 F.2d at 47.

### B. *Dismissal under 28 U.S.C. § 1915(d)*

#### 1. *Dismissal of Frivolous Claims*

 The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure that indigent litigants have meaningful access to the federal courts. *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989); *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 342–43, 69 S.Ct. 85, 90–91, 93 L.Ed. 43 (1948). Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, *inter alia,* that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. at 1831. Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. *Id.* "To prevent such abusive or captious litigation, § 1915(d) authorizes federal courts to dismiss a claim filed *in forma pauperis* 'if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.' " *Id.* "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Id.* at 325, 109 S.Ct. at 1831–32; *Parker v. Carpenter,* 978 F.2d 190, 191 n. 1, 192 (5th Cir.1992); *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465, 468 (5th Cir. 1992).

 Section 1915(d) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly 'baseless.' " *Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). "[A] court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.' " *Id.* at 32–33, 112 S.Ct. at 1733 (quoting *Neitzke,* 490 U.S. at 325, 327–28, 109 S.Ct. at 1831–32, 1832–33). A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them. *Id.* at 33, 112 S.Ct. at 1733–34. An *in forma pauperis* complaint may not be dismissed,

however, simply because the court finds the plaintiff's allegations unlikely.

### 2. Claims under 42 U.S.C. § 1983

 Here, Jolly asserts a claim against Klein under 42 U.S.C. § 1983. Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the constitution or laws of the United States. 42 U.S.C. § 1983; *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir.1984). A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir.1986); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985). Thus, for Jolly to recover, he must establish that Klein deprived him of a right guaranteed by the constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 139, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Jolly must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence. *Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); *Daniels*, 474 U.S. at 328, 106 S.Ct. at 663; *Gamble*, 429 U.S. at 105, 97 S.Ct. at 291; *Hare v. City of Corinth*, 74 F.3d 633, 647–48 (5th Cir.1996).

 To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir.1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986). The doctrine of *respondeat superior* does not apply. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir.1990); *see also Bush v. Viterna*, 795 F.2d 1203, 1206 (5th Cir.1986). Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir.1985); *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). A supervisor may be held liable, however, if he is either personally involved in the constitutional deprivation or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins*, 828 F.2d at 304; *see also Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981); *Wanger v. Bonner*, 621 F.2d 675, 679 (5th Cir.1980); *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 122 (5th Cir.1980). To prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force in causing the plaintiff's harm. *Monell*, 436 U.S. at 692, 694, 98 S.Ct. at 2036, 2037; *Vela v. White*, 703 F.2d 147, 153 (5th Cir.1983).

 When Jolly initially was held in the Harris County Jail, he was a pretrial detainee, but upon his conviction, he was a convicted felon awaiting transfer to a state prison. Because pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the state owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the rubric of "basic human needs"—food, clothing, shelter,

medical care, and reasonable safety. *Hare,* 74 F.3d at 638–39. Pretrial detainees and convicted prisoners, however, look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. *Id.* at 639. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition against cruel and unusual punishment, and, with a relatively limited reach, from substantive due process. *Id.* (citing *Gamble,* 429 U.S. at 104, 97 S.Ct. at 291). The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Id.* (citing *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). *Bell* instructs that the state must distinguish between pretrial detainees and convicted felons in one crucial respect: the state cannot punish a pretrial detainee. 441 U.S. at 535, 99 S.Ct. at 1871–72. Because the state does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to be "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare,* 74 F.3d at 639 (quoting *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)). Hence, decisions dealing with claims of inadequate medical care brought by convicted prisoners are equally applicable to claims brought by pretrial detainees.

For a claim of inadequate medical care to be cognizable under § 1983, a pretrial detainee or convicted state prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); *Gamble,* 429 U.S. at 107, 97 S.Ct. at 292; *Hare,* 74 F.3d at 648; *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir.1995); *Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir.1993); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir.1991); *Jackson v. Cain,* 864 F.2d 1235, 1246 (5th Cir.1989); *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir.1985). Deliberate indifference under either an Eighth Amendment or Fourteenth Amendment analysis of inadequate

medical care requires a showing of "subjective recklessness" as used in criminal law. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1980; *Hare,* 74 F.3d at 648; *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir.1994). A prison official cannot be held liable under the Eighth or Fourteenth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1979; *Hare,* 74 F.3d at 648; *Reeves,* 27 F.3d at 176. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1979; *Hare,* 74 F.3d at 648; *Reeves,* 27 F.3d at 176. An Eighth Amendment or Fourteenth Amendment claimant need not show that a prison official acted, or failed to act, believing that harm actually would befall an inmate; it is enough that the official acted, or failed to act, despite his knowledge of a substantial risk of serious harm. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1981; *see Hare,* 74 F.3d at 648–50. Under certain exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk. *Farmer,* —— U.S. at —— –—— and n. 8, 114 S.Ct. at 1981–82 and n. 8; *Reeves,* 27 F.3d at 176.

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Gamble,* 429 U.S. at 104–05, 97 S.Ct. at 291–92. "[F]acts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction." *Johnson,* 759 F.2d at 1238 (citing *Woodall v. Foti,* 648 F.2d 268 (5th Cir.1981)) (emphasis in original). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.*

Assertions of inadvertent failure to provide medical care or negligent diagno-

sis, however, are insufficient to state a claim. *Wilson,* 501 U.S. at 297, 111 S.Ct. at 2323; *Gamble,* 429 U.S. at 105–06, 97 S.Ct. at 291–92; *Jackson,* 864 F.2d at 1246; *Johnson,* 759 F.2d at 1238. Unsuccessful medical treatment does not give rise to a § 1983 cause of action, nor does a disagreement between an inmate and a prison physician concerning the appropriateness of certain medical care. *Banuelos,* 41 F.3d at 235; *Varnado,* 920 F.2d at 321; *Johnson,* 759 F.2d at 1238. Similarly, a claim that additional diagnostic techniques or forms of treatment should have been utilized is inadequate for purposes of § 1983. *Gamble,* 429 U.S. at 107, 97 S.Ct. at 292. Hence, allegations of mere negligence, neglect, or medical malpractice on the part of a physician do not state an actionable claim under § 1983. *Varnado,* 920 F.2d at 321 (citing *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir.1979)); *Mendoza,* 989 F.2d at 193. As the Supreme Court noted in *Gamble,* "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106, 97 S.Ct. at 292.

In this case, Jolly has pled sufficient facts from which it could be inferred that Klein displayed deliberate indifference to Jolly's medical problems, that the problems were serious, and that he was injured as a result of Klein's acts or omissions regarding his medical condition. *See Wilson,* 501 U.S. at 297, 111 S.Ct. at 2323; *Gamble,* 429 U.S. at 107, 97 S.Ct. at 292. Jolly has stated not only that he forwarded numerous requests for medical assistance describing his problem to Dr. Klein and filed a grievance against him, but that Klein was personally aware of his problem and his numerous requests and still refused to examine him until ordered to do so by the court. These allegations are an adequate basis for inferring that Klein was deliberately indifferent to Jolly's serious medical needs up to the time of the examination in August 1992. *See Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir.1988); *Thompkins,* 828 F.2d at 304–05.

Subsequently, however, Jolly's claims rise, at best, to the level of negligence. Jolly complains that he did not receive any test results or a follow-up appointment with Dr. Klein. He also asserts that Dr. Klein did not perform the appropriate diagnostic tests to detect chlamydia. It is well settled that a decision by a prison doctor not to perform additional diagnostic tests or to prescribe other forms of treatment is matter of medical judgment and does not constitute cruel and unusual punishment. *Gamble,* 429 U.S. at 109, 97 S.Ct. at 293. As the Supreme Court stated in *Gamble,* "At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act." *Id.*

Thus, Jolly has stated a viable claim against Dr. Klein under § 1983 for Klein's alleged inaction prior to his examination of Jolly in August 1992. This court cannot conclude that Jolly can prove no set of facts in support of his § 1983 claim that would entitle him to relief. Therefore, Jolly's pre-examination claims are not subject to dismissal under Fed.R.Civ.P. 12(b)(1) or 12(b)(6) or under 28 U.S.C. § 1915(d). Jolly has failed, however, to state a claim under § 1983 against Dr. Klein for events that occurred during and after his examination. Hence, Jolly's § 1983 claims against Dr. Klein stemming from his medical examination in August 1992 and Klein's action or inaction thereafter are subject to dismissal.

### C. *Qualified Immunity*

Dr. Klein asserts that he is entitled to qualified immunity in this case. Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is available to defendant officials in suits arising under § 1983 and must be pled as an affirmative defense. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737; *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). It is an immunity from suit, extending beyond a defense to liability to

include all aspects of civil litigation, including discovery. *Jacquez,* 801 F.2d at 791; *see also Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985).

When determining whether qualified immunity is available, the actions of a reasonably competent official are assessed in the light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817, 86 L.Ed.2d at 427–28 (1985); *Bennett v. City of Grand Prairie,* 883 F.2d 400, 408 (5th Cir.1989). A legal right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Bennett,* 883 F.2d at 408.

A party seeking damages from an official asserting qualified immunity bears the burden of overcoming that defense. *Id.; United States v. Burzynski Cancer Research Inst.,* 819 F.2d 1301, 1310 (5th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). To do so, the plaintiff must show that the official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff. *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737; *Schultea,* 47 F.3d at 1431–32. In addition, the plaintiff must set forth facts underlying his claim, not mere conclusions, before he may subject public officials to trial or to pretrial discovery in a § 1983 case. *Id.* at 1431–33; *Jacquez,* 801 F.2d at 791; *Elliott,* 751 F.2d at 1478.

In the case at bar, Jolly has pled sufficient facts to overcome Dr. Klein's claim of qualified immunity. As noted above, it has long been recognized that a prisoner has a constitutional right to adequate medical care and that an official violates an inmate's constitutional rights if he is deliberately in-

different to the inmate's serious medical needs, whether the inmate is a convicted prisoner or a pretrial detainee. *Wilson,* 501 U.S. at 297, 111 S.Ct. at 2323; *Gamble,* 429 U.S. at 107, 97 S.Ct. at 292; *Hare,* 74 F.3d at 639; *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir.1986). Jolly has alleged specific facts that, if proven, indicate that Klein knew or reasonably should have known that his actions and/or omissions would violate Jolly's constitutional right to adequate medical care. Hence, it has not been shown that Dr. Klein is entitled to qualified immunity with respect to Jolly's § 1983 claim.

### D. *Eleventh Amendment Immunity*

Jolly does not specify in his complaint whether his claims are brought against Dr. Klein in his official or individual capacity. Any claims brought against Dr. Klein in his official capacity, however, are precluded by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment bars a damages action against a state in federal court. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945); *Ganther v. Ingle,* 75 F.3d 207, 209 (5th Cir.1996). The Eleventh Amendment bar extends to suits brought in federal court against the State of Texas under the Texas Tort Claims Act. *See Astley v. Bekins Van Lines Co.,* 673 F.Supp. 876, 878 (E.D.Tex.1987); *Clift v. Fincannon,* 657 F.Supp. 1535, 1542 (E.D.Tex.1987); *Taylor v. Seamans,* 640 F.Supp. 831, 835 (E.D.Tex.1986). While the Texas Tort Claims Act embodies a limited waiver of the State of Texas's sovereign immunity, this "waiver of immunity is limited to courts of its own creation." *Id.; see also Clift,* 657 F.Supp. at 1542. Federal claims against state employees, such as Dr. Klein, in their official capacities are the equivalent of suits against the state. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2036 n. 55; *Ganther,* 75 F.3d at 209. Thus, the bar of the Eleventh Amendment remains in effect when state officials are sued for damages

in their official capacities. *Graham,* 473 U.S. at 169, 105 S.Ct. at 3107; *Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). This is so because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Graham,* 473 U.S. at 169, 105 S.Ct. at 3107 (quoting *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)).

■■■■ In the context of claims under 42 U.S.C. § 1983, a state is not considered a "person" within the meaning of § 1983. *Will,* 491 U.S. at 64, 109 S.Ct. at 2308–09. Hence, while state officials literally are persons, if sued in their official capacities, they are not deemed "persons" under § 1983. *Id.* at 71, 109 S.Ct. at 2312. A suit against an official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. *Id.; Brandon,* 469 U.S. at 471, 105 S.Ct. at 877. As such, it is no different from a suit against the state itself. *Will,* 491 U.S. at 71, 109 S.Ct. at 2312 (citing *Graham,* 473 U.S. at 165–66, 105 S.Ct. at 3104–05; *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55). Thus, § 1983 suits brought against state officials in their official capacities are, likewise, barred under the Eleventh Amendment.

Therefore, Jolly's claims against Dr. Klein, if asserted against him in his official capacity as an employee of the State of Texas, are barred by the Eleventh Amendment to the Constitution.

### E. *Negligence Claims*

■■■■ Under Texas law, a cause of action for medical malpractice is essentially a negligence action. *Lanier v. Sallas,* 777 F.2d 321, 323 (5th Cir.1985). To prevail, the plaintiff must establish four elements: a legally cognizable duty, a failure to conform to the required standard of care, resulting actual injury, and proximate causation. *Id.* The first inquiry addressed in all negligence cases is whether a duty was owed to the plaintiff by the defendant. *Crider v. United States,* 885 F.2d 294, 295 (5th Cir.1989), *cert. denied,* 495 U.S. 956, 110 S.Ct. 2561, 109 L.Ed.2d 743

(1990); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). In assessing whether a defendant is under a duty, the court considers several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Of these factors, foreseeability of the risk is the dominant consideration. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Proximate cause is composed of two essential elements: cause in fact and foreseeability. *McClure v. Allied Stores of Tex., Inc.,* 608 S.W.2d 901, 903 (Tex.1980). Cause in fact requires that the act or omission at issue be a substantial factor in bringing about the injury, without which such harm would not have occurred. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *Brown v. Edwards Transfer Co.,* 764 S.W.2d 220, 223 (Tex.1988). Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his act or omission created for others. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549–50 (Tex.1985).

■■■ In the case at bar, Jolly has adequately stated a claim for medical malpractice against Dr. Klein in his individual capacity. As noted above, Klein, as a physician at the Harris County Jail, owed him a duty to provide adequate medical care. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1976. He also had a duty to act as would a physician of reasonable and ordinary prudence under the same or similar circumstances. *Hood v. Phillips,* 554 S.W.2d 160, 165 (Tex.1977). Jolly has alleged that Klein breached those duties by failing to examine him despite his numerous requests over a ten-month period and then by failing to perform the appropriate testing and prescribe the proper treatment after he finally examined him. Jolly has also alleged that he has suffered injuries, including pain, sterility, urinary problems, and disfigurement as a result of Klein's acts or omissions. A reasonable physician should have foreseen

that permitting a patient to continue to suffer from penile discharge, difficulty in urinating, and decrease in the size of a testicle over an extended period of time would likely lead to his injury. Therefore, Jolly has stated a cognizable claim for medical malpractice under Texas law.

Moreover, contrary to Klein's assertion, a failure to give the notice required under the Medical Liability and Insurance Improvement Act, Tex.Rev.Civ.Stat.Ann. art. 4590i, does not mandate the dismissal of a medical malpractice case. Instead, the cause of action simply should be stayed for sixty days to permit such notice. *Baber v. Edman,* 719 F.2d 122, 123 (5th Cir.1983); *De Checa v. Diagnostic Ctr. Hosp., Inc.,* 852 S.W.2d 935, 938 (Tex.1993); *Schepps v. Presbyterian Hosp. of Dallas,* 652 S.W.2d 934, 938 (Tex.1983).

### F. Official Immunity

Dr. Klein claims that Jolly's negligence claims are barred under Texas law by the doctrine of official immunity. Unlike sovereign immunity, which protects governmental entities, official immunity protects individual officials from liability. *DeWitt v. Harris County,* 904 S.W.2d 650, 652 (Tex. 1995); *Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994). "Official immunity . . . exists so government officials may remain free to exercise their duties without fear of damage suits: suits which would consume their time and energy and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." *Jackson v. Stinnett,* 881 S.W.2d 498, 500 (Tex.App.—El Paso 1994, no writ); *see Armendarez v. Tarrant County Hosp. Dist.,* 781 S.W.2d 301, 305 (Tex.App.—Fort Worth 1989, writ denied). The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials. *Westfall v. Erwin,* 484 U.S. 292, 295, 108 S.Ct. 580, 583, 98 L.Ed.2d 619 (1988); *Kassen,* 887 S.W.2d at 8.

In Texas, official immunity is an affirmative defense which places on the defendant the burden of establishing all of its elements. *Chambers,* 883 S.W.2d at 653;

*Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Under Texas law, "[g]overnment officials are entitled to immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *Cantu v. Rocha,* 77 F.3d 795, 808–09 (5th Cir.1996) (quoting *Chambers,* 883 S.W.2d at 653); *Kassen,* 887 S.W.2d at 9; *Wyse v. Department of Pub. Safety,* 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.); *Baker v. Story,* 621 S.W.2d 639, 644 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). An act is discretionary under Texas law if it requires personal deliberation, decision, and judgment. *Harris County v. Ochoa,* 881 S.W.2d 884, 887 (Tex.App.— Houston [14th Dist.] 1994, writ denied); *Esparza v. Diaz,* 802 S.W.2d 772, 779 (Tex. App.—Houston [14th Dist.] 1990, no writ). Discretionary functions receive protection, but ministerial duties do not. *Kassen,* 887 S.W.2d at 9. As the Texas Supreme Court explained in *Chambers:*

> Ministerial acts are those "[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment . . . but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial" . . . . If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial.

883 S.W.2d at 654 (citations omitted); *see Kassen,* 887 S.W.2d at 9; *Baker,* 621 S.W.2d at 645.

An official acts in "good faith" if any reasonably prudent official could have believed that his conduct was consistent with the plaintiff's rights. *Cantu,* 77 F.3d at 808– 09; *Chambers,* 883 S.W.2d at 656–57. Texas's test of good faith focuses solely on the objective legal reasonableness of the official's conduct. *Cantu,* 77 F.3d at 808–09; *Chambers,* 883 S.W.2d at 656–57. An official is said to be acting within the scope of his authority for immunity purposes when dis-

charging duties generally assigned to that official, even though the official may be acting unlawfully. *Cantu,* 77 F.3d at 808–09; *Chambers,* 883 S.W.2d at 658.

 In the context of state-employed health care workers, however, the courts of Texas distinguish between the exercise of governmental discretion and medical discretion. *Kassen,* 887 S.W.2d at 11; *Kerrville State Hosp. v. Clark,* 900 S.W.2d 425, 434 (Tex.App.—Austin 1995, writ granted); *Jackson,* 881 S.W.2d at 501. In *Kassen,* the Texas Supreme Court held that government-employed medical personnel are not immune from tort liability if the character of the discretion they exercise is medical in nature and not governmental. 887 S.W.2d at 11. Hence, a state-employed doctor, nurse, or dentist has official immunity from claims arising out of the exercise of governmental discretion, but is not immune from liability arising from the exercise of medical discretion. *Id.; Kerrville State Hosp.,* 900 S.W.2d at 434; *Jackson,* 881 S.W.2d at 501. The Texas Supreme Court explained the reason for this distinction in *Kassen:*

> Government service imposes constraints and responsibilities on health-care providers that private practitioners do not have. For example, government health care-providers have less latitude in choosing patients than their private-sector counterparts.... Also, state-employed medical personnel often have policy-making or administrative responsibilities not shared by private-sector providers. At times, government doctors and nurses must decide how to allocate a scarce pool of state resources among possible recipients. Because of these circumstances, the good faith performance of governmental responsibilities should not be subject to second-guessing in the courtroom. Such litigation would result in a drain on state resources that are already scarce. It would further discourage qualified individuals from entering medical practice in the public sector. Government medical facilities are already hard-pressed to attract candidates because of government's typically lower salaries than in the private sector.

On the other hand, once a government health-care provider begins to treat a patient, the duty of care owed to the patient is no different from the duty of care owed by any medical professional. If a doctor or nurse does not perform a medical procedure with the level of care and skill of an ordinarily prudent health care provider, a patient injured as a result should not suffer without compensation for the sole reason that the doctor or nurse is a government employee.

887 S.W.2d at 10; *see Henderson v. Bluemink,* 511 F.2d 399, 403 (D.C.Cir.1974).

 Here, prior to Dr. Klein's examination of Jolly, it is not apparent whether Klein was exercising governmental or medical discretion when he failed to give him an appointment. Assuming, as Jolly contends, that Klein was aware of his numerous requests to be seen by a physician, Klein's inaction could have been the result of a decision concerning the allocation of scarce resources among possible recipients. *See Kassen,* 887 S.W.2d at 10. On the other hand, it could have been based on Klein's medical determination that there was no reason for him to examine Jolly in view of his previous negative blood tests. A third possibility is that Klein could have been deliberately indifferent to Jolly's serious medical needs, as Jolly asserts. Thus, without additional evidence, the court cannot ascertain whether Klein was exercising governmental discretion, for which he could be entitled to official immunity, or medical discretion, for which he would not. *Id.* at 12; *Baker,* 621 S.W.2d at 645–46. In addition, if he were exercising governmental discretion, it has not been established that Klein was acting with the requisite "good faith," *i.e.,* objective reasonableness, to permit him to invoke the defense of official immunity.

Once Dr. Klein examined Jolly in August 1992, however, he was strictly exercising his medical discretion. Klein's decision to draw and test additional blood, but not otherwise to test or treat Jolly was purely a medical decision. *See Kerrville State Hosp.,* 900 S.W.2d at 434. Medical professionals, whether employed in the public or private sector, exercise considerable judgment and discre-

tion in examining a patient, evaluating symptoms, and prescribing treatment. *Kassen,* 887 S.W.2d at 9. Such exercise of Klein's professional or occupational discretion upon examining Jolly, however, does not entitle him to official immunity from any negligence that he may have committed in the course of the examination or thereafter. *Kerrville State Hosp.,* 900 S.W.2d at 434. Therefore, it has not been established that Dr. Klein is entitled to the dismissal of Jolly's negligence claims based on his assertion of official immunity.

### III. *Conclusion*

Jolly has stated a sufficient claim under § 1983 against Dr. Klein for his acts and/or omissions prior to Jolly's medical examination in August 1992 to avoid dismissal of this action. Moreover, it has not been shown that Klein is entitled to qualified immunity as to that claim. As to Jolly's claims arising from the examination and Klein's acts and/or omissions thereafter, Jolly has failed to state an actionable claim under § 1983, and those claims are dismissed. In addition, Klein is immune under the Eleventh Amendment from claims made against him in his official capacity. Thus, all of Jolly's claims against Klein in his official capacity are dismissed. Jolly's claims against Dr. Klein in his individual capacity under § 1983 for events that occurred prior to his August 1992 medical examination may proceed. In addition, Jolly has adequately stated a medical malpractice claim against Dr. Klein, and it has not been established that Klein is entitled to official immunity as to that claim. Hence, Jolly's negligence claims against Dr. Klein in his individual capacity may proceed, subject, however, to a sixty-day abatement due to Jolly's failure to give Klein the required statutory notice.